## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| AUTO - OWNERS INSURANCE | ) | |
| COMPANY and OWNERS | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | CIVIL ACTION FILE NO. |
| v. | ) | |
| | ) | _____ |
| MEP PRO SERVICES, LLC; THE | ) | |
| WHITING-TURNER | ) | |
| CONTRACTING COMPANY; | ) | |
| AND UNITED STATES FIRE | ) | |
| INSURANCE COMPANY | ) | |

Defendants.

## **COMPLAINT FOR DECLARATORY JUDGMENT**

COME NOW, AUTO-OWNERS INSURANCE COMPANY ("Auto-Owners") and OWNERS INSURANCE COMPANY ("Owners"), Plaintiffs in the above-styled action, and file this Complaint for Declaratory Judgment, showing this honorable Court as follows:

## **PARTIES AND JURISDICTION**

### 1.

This is an action for declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and

other legal relations surrounding the questions of actual controversy which presently exist among Auto-Owners and Owners and MEP Pro Services, LLC ("MEP Pro"); The Whiting-Turner Contracting Company ("Whiting-Turner"); and United States Fire Insurance Company ("U.S. Fire") (MEP Pro, Whiting-Turner, and U.S. Fire collectively, the "Defendants").

2.

Defendant MEP Pro is a Georgia limited liability company existing under the laws of Georgia, and can be served through its registered agent, Harold J. Phillips, 30 Dorris Rd, Alpharetta, GA 30004.

3.

Defendant Whiting-Turner is a Maryland corporation, authorized to do business in the state of Georgia, and which may be served through its registered agent, C T CORPORATION SYSTEM, 289 S. Culver Street, Lawrenceville, GA 30046-4805.

4.

Defendant U.S. Fire is a New York insurance company, authorized to do business in the state of Georgia, and which may be served through its registered agent, C T CORPORATION SYSTEM, 289 S. Culver Street, Lawrenceville, GA 30046-4805.

5.

Defendant MEP Pro seeks coverage from Auto-Owners under a policy of liability insurance for the allegations made against it in a lawsuit filed against it by Whiting-Turner, which is further detailed below.

6.

Defendant MEP Pro has neither sought coverage nor affirmatively stated that it would not seek coverage from Owners under a policy of liability insurance for the allegations made against it in a lawsuit filed against it by Whiting-Turner, which is further detailed below.

7.

Whiting-Turner is the Plaintiff in the underlying lawsuit detailed below and, therefore, it is a necessary party to this action.

8.

Defendant United States Fire Insurance Company ("U.S. Fire") is a Defendant in the underlying lawsuit detailed below and, therefore, it is a necessary party to this action.

9.

Auto-Owners is a corporation organized and existing under the laws of the State of Michigan and having its principal place of business in Michigan. Auto-Owners submits itself to the jurisdiction and venue of this Court.

10.

Owners is a corporation organized and existing under the laws of the State of Michigan and having its principal place of business in Michigan. Owners submits itself to the jurisdiction and venue of this Court.

11.

This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332, because it is a civil action in which the amount in controversy exceeds the sum or value of $75,000, exclusive on interest and costs, and is among citizens of different states.

12.

Venue in this action is proper pursuant to 28 U.S.C. § 1391.

**FACTUAL BACKGROUND**

13.

On September 25, 2020, Whiting-Turner filed the lawsuit captioned The Whiting-Turner Contracting Company v. MEP Pro Services, LLC; and United

States Fire Insurance Company, in the State Court of Fulton County, Georgia, Civil Action File No. 20EV005573 (the "underlying lawsuit"), naming MEP Pro and U.S. Fire as Defendants.  A copy of the underlying lawsuit is attached hereto as Exhibit 1.

14.

Whiting-Turner and U.S. Fire have been included as named Defendants in this action for declaratory relief because they have a potential financial interest in the outcome of this action.

15.

MEP Pro has been served with the underlying lawsuit  and filed its Answer to the same.

16.

According to the underlying lawsuit, Whiting-Turner was the general contractor on a project known as SLX Atlanta located at 5211 Peachtree Industrial Boulevard, DeKalb County, Georgia 30341 (the "Project").  Exhibit 1 at ¶ 7.

17.

According to the underlying lawsuit, on November 2, 2017, Whiting-Turner and MEP Pro entered into a Subcontract, pursuant to which MEP Pro agreed to provide plumbing services at the Project.  Exhibit 1 at ¶ 7.

-5-

Case 1:21-cv-00971-SCJ   Document 1   Filed 03/08/21   Page 6 of 85

18.

According to the underlying lawsuit, in connection with the Project, US Fire executed a performance bond in favor of Whiting-Turner and on behalf of MEP Pro. Exhibit 1 at ¶ 9-10.

19.

Whiting-Turner alleges that MEP Pro is in default of its obligations under the Subcontract and that its negligence caused certain damage to the Project. Exhibit 1 at ¶ 19-20, 47, 63-66.

20.

Whiting-Turner alleges that it provided written notice of MEP Pro's alleged defaults at the Project to US Fire on August 1, 2018 and September 12, 2018. Exhibit 1 at ¶ 21.A and Exhibit C thereto.

21.

On September 7, 2018, Whiting-Turner provided notice of default to MEP Pro regarding "its failure to pursue the work in accordance with the schedule, failure to supply sufficient manpower and/or materials of required quality, and its disruption of Whiting-Turner's work or others connected with the Project." Exhibit 1 at ¶ 21.B and Exhibit D thereto.

22.

On October 2, 2018, Whiting-Turner provided a notice of default to MEP Pro regarding "its failure to pursue the work in accordance with the schedule, failure to supply sufficient manpower and materials, failure to perform certain work (such as failing to install fire caulk and water riser and failing to perform testing on waste and water systems), and its disruption of Whiting-Turner's work or others connected with the Project."  Exhibit 1 at ¶ 21.C and Exhibit E thereto.

23.

On October 24, 2018, Whiting-Turner provided a notice of default to MEP Pro regarding "its failure to pursue the work in accordance with the schedule, failure to supply proper management/supervision, failure to supply sufficient manpower, failure to perform or complete certain work (such as failing to set bathtubs, not completing the fire caulk or water mains in corridors), and its disruption of Whiting-Turner's work or others connected with the Project." Exhibit 1 at ¶ 21.D and Exhibit F thereto.

24.

In Count I of the underlying lawsuit, Whiting-Turner makes a claim for breach of contract against MEP Pro, alleging that it "materially breached the Subcontract" by (a) failing to diligently pursue and maintain the progress of its

work according to schedule; (b) failing to provide proper and sufficient management and supervision of its work on the Project; (c) failing to provide proper and sufficient manpower to perform its work on the Project; (d) failing to supply all material necessary to timely perform and complete its work on the Project; and (e) failing to timely pay its second-tier subcontractors and suppliers. Exhibit 1 at ¶ 46.

25.

Whiting-Turner seeks damages for the breach of contract claim including that "MEP Pro agreed to pay Whiting-Turner its costs and damages caused by MEP Pro's defaults and failures to meet its obligations under the Subcontract, including any delay or damages caused by MEP Pro, such as consequential or liquidated damages threatened or assessed against Whiting-Turner." Exhibit 1 at ¶ 47.

26.

In Count II of the underlying lawsuit, Whiting-Turner makes a claim against MEP Pro and U.S. Fire for liability under the bond. Exhibit 1 at ¶ 50-61.

27.

In Count II of the underlying lawsuit, Whiting-Turner seeks damages related to its assumption of MEP Pro's debts, payments it made to second-tier

subcontractors and suppliers, and consequential and liquidated damages assessed against Whiting-Turner.  Exhibit 1 at ¶ 54, 57, 58.

28.

In Count III of the underlying lawsuit, Whiting-Turner alleges that MEP Pro negligently installed pipe and failed to install pipe in a good and workmanlike manner, resulting in leaks, which caused damage to parts of the Project.  Exhibit 1 at ¶ 64-65.

29.

In Count III of the underlying lawsuit, Whiting-Turner seeks unspecified damages for Whiting-Turner's alleged negligence.  Exhibit 1 at ¶ 64-65.

30.

According to a "leak log" provided by Whiting-Turner, the cost of repairs which are allegedly due to MEP Pro's negligence exceeds $118,000.

**OWNERS' POLICIES**

31.

Owners issued Tailored Protection Policy number 174618-57339643-17 to MEP Pro for the policy periods of August 4, 2017 to August 4, 2018 ("First Owners Policy").  A true and correct copy of the First Owners Policy is attached hereto as Exhibit 2. Policy number 174618-57339643-18 was issued to MEP Pro,

with effective dates from August 4, 2018 through August 4, 2019 ("Second Owners Policy") (First Owners Policy and Second Owners Policy together "Owners Policies").   A true and correct copy of the Second Owners Policy is attached as Exhibit 3.   The Owners Policies provided general liability coverage with general aggregate limits of $2 million, and an each occurrence limit of $1 million.   Under the Owners Policies' Commercial General Liability Coverage Form, coverage was provided as follows:

### COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.   Insuring Agreement

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** - Limits of Insurance; and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

-10-

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

…

32.

The Owners Policies, as amended by endorsement, also contained the following exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. However, if the insurance under this policy does not apply to the liability of the insured, it also does not apply to such liability assumed by the insured under an "insured contract".

**(2)** That the insured would have in the absence of the contract or agreement.

…

**j.     Damage to Property**

"Property damage" to:

…

(6) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(7) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

…

Paragraph (7) of this exclusion does not apply to "property damage" included in the "products completed operations hazard."

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

-13-

33.

The Owners Policies contain a **Georgia Limited Fungi or Bacteria Coverage-Small Business** endorsement, which states, in relevant part, as follows:

**2.    Exclusions**

This insurance does not apply to:

**a.**    "Bodily Injury" arising out of a "fungi or bacteria incident".

**b.**    Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

…

The endorsement further provides that the limit shown in the schedule "is the most we will pay under Coverage **A** for all 'property damage' arising out of one or more "fungi or bacteria incident'."  The endorsement contains the following definitions:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

-14-

"Fungi or bacteria incident" means an incident which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such damage.

34.

The Owners Policies contained preconditions to coverage with which an insured was required to comply.  For example, the Owners Policies stated:

**2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**    If any claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of any claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

    **c.**      You and any other involved insured must:

        (1) Immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit";

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us in the investigation or settlement of any claim or defense of any "suit"; and

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.**  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

35.

In addition, each Owners Policy contained a Commercial General Liability Plus endorsement, which provided for a Broadened Knowledge of Occurrence provision. More specifically, the policies provided as follows:

    **5.**      **BROADENED KNOWLEDGE OF OCCURRENCE**

    Under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties In The Event of Occurrence, Offense, Claim Or Suit,** the following paragraph is added:

    Paragraphs a. and b. of this condition will not serve to deny any claim for failure to provide us with notice as soon as

-16-

practicable after an "occurrence" or an offense which may result in a claim:

a.      If the notice of a new claim is given to your "employee"; and

b.      That "employee" fails to provide us with notice as soon as practicable.

This exception shall not apply:

a.      To you; or

b.      To any officer, director, partner, risk manager or insurance manager of yours.

36.

The Owners Policies also contained the following condition:

**4.  Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.      Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

b.  Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to an insured, other than an additional insured, covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement. When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers. When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(**2**) The total of all deductible and self-insured amounts under all that other insurance. We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

37.

On March 29, 2019, a non-renewal notice for the Second Owners Policy was mailed, showing that the policy would not be renewed effective August 4, 2019. A true and correct copy of the non-renewal notice is attached hereto as Exhibit 4.

## AUTO-OWNERS' POLICY

38.

On September 20, 2019, MEP Pro's insurance agent contacted Auto-Owners and requested coverage for MEP Pro. The agent represented that MEP Pro had suffered no losses during the two policy terms that the Owners policy was in effect.

39.

Auto-Owners agreed to rewrite the policy with a current effective date if loss runs were provided from August 4, 2019 to present, showing continuous coverage.

40.

MEP Pro submitted a web application for the Auto-Owners Policy, representing that it was insured by MetLife from August 23, 2019 through August

23, 2020, that it had no losses in the past five years, and that no policy had been cancelled or non-renewed in the past three years.  A true and correct copy of said web application is attached hereto as Exhibit 5.

41.

MEP Pro did not disclose any insurance coverage in effect from August 4, 2019, when the Owners Policy was cancelled or non-renewed, to August 23, 2019. However, MEP Pro also represented that it had no lapses in coverage within three years of the application.

42.

Without waiving defenses related to application misrepresentations or lack of consideration, Auto-Owners shows that, based on the representations in the application,  it issued Tailored Protection Policy number 194618-57521819-19 to MEP Pro for the policy period of September 20, 2019 to September 20, 2020 ("Auto-Owners Policy").  A true and correct copy of the Auto-Owners Policy is attached hereto as Exhibit 6. The Auto-Owners Policy provided general liability coverage with general aggregate limits of $2 million, and an each occurrence limit of $1 million.   The Auto-Owners Policy's commercial general liability coverage form provided, as follows:

## COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1.   Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.   This insurance applies to "bodily injury" and "property damage" only if:

…

   (2)  The "bodily injury" or "property damage" occurs during the policy period; and

   (3)  Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage"

-21-

had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1)  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   (2)  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

   …

43.

The Auto-Owners Policy's **COMMON POLICY CONDITIONS**, **A.**

**CANCELLATION** provided as follows:

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

44.

The Auto-Owners Policy also contained the following exclusions:

**2. Exclusions**

This insurance does not apply to:

**a.     Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

. . .

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage"

-23-

occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

…

**j.      Damage to Property**

"Property damage" to:

…

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

…

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard."

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

    (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

45.

The Auto-Owners Policy's **Georgia Limited Fungi or Bacteria Coverage-Small Business** endorsement states, in relevant part, as follows:

**2.     Exclusions**

This insurance does not apply to:

    **a.**      "Bodily Injury" arising out of a "fungi or bacteria incident".

    **b.**      Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

    This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

***

The endorsement further provides that the limit shown in the schedule "is the most we will pay under Coverage **A** for all 'property damage' arising out of one or more "fungi or bacteria incident'." The endorsement contains the following definitions:

    **1.**      "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

    **2.**      "Fungi or bacteria incident" means an incident which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such damage.

-26-

46.

The Auto-Owners Policy contained preconditions to coverage with which an insured was required to comply.  For example, the Auto-Owners Policy stated:

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

 **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

  (1) How, when and where the "occurrence" or offense took place;

  (2) The names and addresses of any injured persons and witnesses; and

  (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

 **b.** If any claim is made or "suit" is brought against any insured, you must:

  (1) Immediately record the specifics of any claim or "suit" and the date received; and

  (2) Notify us as soon as practicable.

  You must see to it that we receive written notice of any claim or "suit" as soon as practicable.

 **c.** You and any other involved insured must:

  (1) Immediately send us copies of any correspondence, demands, notices, summonses or papers in connection with any claim or "suit";

-27-

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of any claim or defense of any "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

47.

The Auto-Owners Policy contained a Commercial General Liability Plus endorsement, which provided for a Broadened Knowledge of Occurrence provision. More specifically, the Auto-Owners Policy provided as follows:

**5.     BROADENED KNOWLEDGE OF OCCURRENCE**

Under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 2. Duties In The Event of Occurrence, Offense, Claim Or Suit,** the following paragraph is added:

Paragraphs a. and b. of this condition will not serve to deny any claim for failure to provide us with notice as soon as practicable after an "occurrence" or an offense which may result in a claim:

a.    If the notice of a new claim is given to your "employee"; and

b.      That "employee" fails to provide us with notice as soon as practicable.

This exception shall not apply:

a.      To you; or

b.      To any officer, director, partner, risk manager or insurance manager of yours.

48.

In addition, the Auto-Owners Policy contained the following condition regarding other insurance coverage:

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.     Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess

of the Limits of Insurance shown in the Declarations of this Coverage Part.

49.

The Auto-Owners Policy provides in **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, as follows:

**5. Premium Audit**

  **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

  **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

  **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

In addition, the Common Policy Conditions provide, as follows:

**E. PREMIUMS**

  The first Named Insured shown in the Declarations:

  **a.** Is responsible for the payment of all premiums; and

  **b.** Will be the payee for any return premiums we pay.

50.

The Auto-Owners Policy provides in **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, as follows:

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

51.

The Auto-Owners Policy provides in **COMMERCIAL INLAND MARINE CONDITIONS**, **SPECIAL CONDITIONS,** as follows:

CONCEALMENT, MISREPRESENTATION OR FRAUD

This coverage is void as to you and any other insured if, before or after a loss:

a. You or any other insured have willfully concealed or misrepresented:

(1) A material fact or circumstance that relates to this insurance or the subject thereof; or

(2) Your interest herein.

b. There has been fraud or false swearing by you or any other insured with regard to a matter that relates to this insurance or the subject thereof.

52.

The Auto-Owners Policy further provides in **SPECIAL CONDITIONS**

**AMENDATORY ENDORSEMENT**, as follows:

Under COMMERCIAL INLAND MARINE CONDITIONS, SPECIAL CONDITIONS, are amended as follows:

1. CONCEALMENT, MISREPRESENTATION OR FRAUD is deleted and replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD Any misrepresentations, omissions, concealment of facts, and incorrect statements by or on behalf of any insured shall not prevent a recovery under this policy unless:

a. fraudulent;

b. material either to the acceptance of the risk or to the hazard assumed by us; or

c. we in good faith would either not have issued the policy or would not have issued this policy in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to us as required by the application for this policy.

53.

MEP Pro agreed to provide payment of the premium owed for the Auto-Owners Policy through automatic monthly billing.

54.

On September 24, 2019, Auto-Owners attempted to withdraw the first premium from MEP Pro's bank account.

55.

On September 27, 2019, MEP Pro's payment was reversed by its bank.

56.

On September 30, 2019, Auto-Owners issued a returned payment notice to MEP Pro.

57.

On October 31, 2019, Auto-Owners billed MEP Pro in full, but MEP Pro did not pay the premium owed for the Auto-Owners Policy.

58.

The Auto-Owners Policy was cancelled effective December 20, 2019 for nonpayment of premium.

59.

On December 31, 2019 and January 30, 2020, Auto-Owners sent bills to MEP Pro for earned premiums.

60.

MEP Pro never made any premium payments on the Auto-Owners Policy.

61.

On January 7, 2020, Whiting-Turner sent a letter to MEP Pro's insurance agent, Integrated Insurance Solutions, placing it on notice that Whiting-Turner terminated the Subcontract for lack of performance and that it had experienced a number of quality issues with MEP Pro's work, which resulted in leaks, requiring repair work by other contracting trades (drywall / paint / millwork / plumbing).

62.

Whiting-Turner enclosed a purported Certificate of Insurance dated September 20, 2019 with the January 7, 2020 letter, purportedly naming Whiting-Turner as an additional insured under the Auto-Owners Policy for the SLX project. The purported Certificate of Insurance is attached as Exhibit 7.

63.

The purported Certificate of Insurance expressly states that "if the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed…..A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s)." The Certificate also states,

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND,

-35-

EXTEND, OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

64.

This purported Certificate of Insurance was issued without the authorization of Auto-Owners.

65.

Whiting-Turner also enclosed a purported Blanket Additional Insured endorsement, purportedly an endorsement to the Auto-Owners Policy, in the January 7, 2020 letter.  The purported Blanket Additional Insured endorsement is attached as Exhibit 8.

66.

Auto-Owners has no record of having issued any Blanket Additional Insured endorsement for the Auto-Owners Policy issued to MEP Pro, and no Blanket Additional Insured Endorsement was made a part of the Auto-Owners Policy issued to MEP Pro.

67.

MEP Pro did not place Auto-Owners on notice of a potential claim related to the Project until February 18, 2020.

68.

MEP Pro never placed Owners on notice of a potential claim related to the Project.

69.

On or about January 8, 2021, Auto-Owners and Owners requested copies of all insurance policies on which MEP Pro was named as an additional insured in 2018, 2019, or 2020 and all Certificates of Insurance issued to or naming MEP Pro in 2018, 2019, or 2020.

70.

As of the date of this Complaint, MEP Pro has failed to provide any evidence of other insurance, including policies issued to MEP Pro's subcontractors or any policy issued after the Second Owners Policy lapsed.

## FIRST CLAIM FOR RELIEF

### Application Misrepresentation under O.C.G.A. § 33-24-7

71.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

72.

MEP Pro stated on its application that it had no lapses in coverage and that it had no claims in the prior three years, which are material representations under O.C.G.A. § 33-24-7.

73.

Had Auto-Owners known the true facts related to the lapse in coverage or the claims made against MEP Pro, it would not have issued the Auto-Owners Policy or would not have issued the Auto-Owners Policy in as large an amount or at a premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts regarding the nature of the business had been known to Auto-Owners. *See* O.C.G.A. § 33-24-7.

74.

Based upon MEP Pro's material misrepresentations, which, if known to Auto-Owners, would have affected whether or the terms under which Auto-Owners issued a policy to MEP Pro, Auto-Owners requests permission to rescind the policy and declare it void *ab initio*.

75.

Auto-Owners is currently providing a defense to MEP Pro in the underlying lawsuit subject to a reservation of rights.  In providing a defense, Auto-Owners has

reserved its rights to later withdraw such defenses and/or disclaim coverage and indemnification for all or part of any judgment that may be obtained against MEP Pro.

76.

If the Auto-Owners Policy issued to MEP Pro is declared void *ab ibnitio*, then Auto-Owners Policy does not have any obligation to provide coverage for the underlying lawsuit against Defendant MEP Pro, and Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in the underlying lawsuit.

77.

Accordingly, Auto-Owners seeks a declaration that it has no duty to defend or indemnify MEP Pro for any liability that may be sought against said Defendant in the underlying lawsuit because the Auto-Owners Policy is void *ab ibnitio*.

**SECOND CLAIM FOR RELIEF**

**<u>Breach of the Misrepresentation Provisions of the Auto-Owners Policy</u>**

78.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

79.

The Auto-Owners Policy requires that the statements made by the insured be accurate and complete.  See ¶ 50.

80.

The Auto-Owners Policy prevents recovery if any misrepresentations, omissions, concealment of facts, or incorrect statements by the insured are fraudulent; material either to acceptance of the risk or to the hazard assumed by Auto-Owners; or Auto-Owners would in good faith either not have issued the policy or would not have issued this policy in as large an amount or at the premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to it as required by the application for this policy.  See ¶ 51-52.

81.

MEP Pro misrepresented and/or concealed material facts relating to its application for insurance, including that it had no lapses in coverage and that it had no claims in the prior three years.

82.

MEP Pro intentionally misrepresented and/or concealed facts that were material to Auto-Owners' decision to issue the Auto-Owners Policy or the premium rate charged for the Auto-Owners Policy.

83.

MEP Pro intended to deceive Auto-Owners in order to induce it to issue the Auto-Owners Policy.

84.

Had Auto-Owners known the true facts related to the lapse in coverage or the claims made against MEP Pro, it would not have issued the Auto-Owners Policy or would not have issued the Auto-Owners Policy in as large an amount or at a premium rate as applied for or would not have provided coverage with respect to the hazard resulting in the loss if the true facts regarding the nature of the business had been known to Auto-Owners.

85.

Based upon MEP Pro's material misrepresentations and intent to deceive Auto-Owners, Auto-Owners requests permission to rescind the Auto-Owners Policy. Since MEP Pro paid no premiums, Auto-Owners has no consideration to return to MEP Pro.

86.

Auto-Owners is currently providing a defense to MEP Pro in the underlying lawsuit subject to a reservation of rights.  In providing a defense, Auto-Owners has reserved its rights to later withdraw such defenses and/or disclaim coverage and indemnification for all or part of any judgment that may be obtained against MEP Pro.

87.

If the Auto-Owners Policy is rescinded, then Auto-Owners Policy does not have any obligation to provide coverage for the underlying lawsuit against Defendant MEP Pro, and Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in the underlying lawsuit.

88.

In the alternative, based upon MEP Pro's material misrepresentations, which, if known to Auto-Owners, would have affected whether or the terms under which Auto-Owners issued a policy to MEP Pro, Auto-Owners seeks a declaration that no coverage is owed under the Auto-Owners Policy.

89.

Accordingly, Auto-Owners seeks a declaration that it has no duty to defend or indemnify MEP Pro for any liability that may be sought against said Defendant in the underlying lawsuit because the Auto-Owners Policy is rescinded.

## THIRD CLAIM FOR RELIEF

### Lack of Consideration – Auto-Owners Policy

90.

Plaintiffs reiterate paragraphs 1 through 70  as if fully set forth herein.

91.

Auto-Owners would not have issued coverage to MEP Pro under the Auto-Owners Policy without a payment of premium.

92.

The Auto-Owners Policy requires that MEP Pro, as the named insured, submit premium payments.  See ¶ 49.

93.

MEP Pro failed to pay any policy premiums for the Auto-Owners Policy.

94.

A question exists whether the Auto-Owners Policy was ever in force because MEP Pro failed to consummate the contract because it failed to pay any premium.

95.

A question exists whether the Auto-Owners Policy fails for insufficient consideration.

96.

If the Auto-Owners Policy was never consummated or fails for lack of consideration, then Auto-Owners Policy is null and void and does not provide coverage for the underlying lawsuit against Defendant MEP Pro, and Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

97.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties, if any, under the applicable contracts of insurance determined and avoid the possible accrual of damages.

98.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant MEP Pro for any liability that may be sought against said Defendant in the underlying lawsuit because the

Auto-Owners Policy was never consummated or fails for insufficient consideration.

## FOURTH CLAIM FOR RELIEF

## Late Notice – Auto-Owners Policy

99.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

100.

Whiting-Turner placed MEP Pro on notice of its defaults and claims of damage, which defaults and claims of damage gave rise to the underlying lawsuit at least as early as September 7, 2018.

101.

MEP Pro did not place Auto-Owners on notice of a potential claim by Whiting-Turner for damages until February 18, 2020.

102.

If the Auto-Owners Policy was ever in force, under conditions set forth in the Auto-Owners Policy, MEP Pro was required to notify the insurer "as soon as practicable of an 'occurrence' or an offense which may result in a claim." See ¶ 46, 47.

103.

A question exists whether MEP Pro provided timely notice to Auto-Owners of the claim giving rise to the underlying lawsuit.

104.

If MEP Pro failed to provide timely notice, then the Auto-Owners Policy does not provide coverage for the underlying lawsuit against Defendant MEP Pro, and Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

105.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties, if any, under the applicable contracts of insurance determined and avoid the possible accrual of damages.

106.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant MEP Pro for any liability that may be sought against said Defendant in the underlying lawsuit because MEP Pro failed to provide timely notice of the claim.

## FIFTH CLAIM FOR RELIEF

### <u>Whiting-Turner's Purported Status as an Additional Insured – Auto-Owners Policy</u>

107.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

108.

Whiting-Turner contends it is an additional insured under the Auto-Owners Policy.

109.

To the extent that Whiting-Turner is an additional insured under the Auto-Owners Policy, the Auto-Owners Policy does not provide liability coverage for a dispute between two insureds.

110.

Further, if the Auto-Owners Policy was ever in force, under the Auto-Owners Policy, the Auto-Owners Policy excludes coverage for damage to "your work," and the definition of "your work" would include the entire Project.  <u>See</u> ¶ 44.

111.

Thus, to the extent that Whiting-Turner is an additional insured under the Auto-Owners Policy, the entire project would fall within the scope of "your work," such that no coverage would be afforded.  See ¶ 44.

112.

A question exists whether Whiting-Turner is an additional insured under any of the Policies.

113.

If Whiting-Turner is an additional insured under the Auto-Owners Policy, then the Auto-Owners Policy does not provide coverage for the underlying lawsuit against Defendant MEP Pro, and Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

114.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties, if any, under the applicable contracts of insurance determined and avoid the possible accrual of damages.

115.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant MEP Pro for any liability that may be sought against it because MEP Pro and Whiting-Turner are both insureds under the Auto-Owners Policy.

**SIXTH CLAIM FOR RELIEF**

**Occurrence– Auto-Owners Policy**

116.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

117.

To the extent that MEP Pro has failed to satisfy the conditions of coverage in the contract of insurance issued by Auto-Owners, the Auto-Owners Policy does not provide coverage for the underlying lawsuit against Defendant MEP Pro, and Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

118.

Specifically, if the Auto-Owners Policy was ever in force, no coverage is owed to Defendant MEP Pro under the Auto-Owners Policy for the damages asserted in the underlying lawsuit to the extent that the damages at issue were not

"caused by an 'occurrence,'" as defined under the Auto-Owners Policy, which occurred during the policy period.  See ¶ 42.

119.

Therefore, to the extent that the alleged damages were not caused by an "occurrence" under the respective policies at issue, no coverage is afforded under said policies for liability or damages that may be sought against Defendant MEP Pro in the underlying lawsuit.

120.

For instance, to the extent Whiting-Turner's alleged injuries were not caused by an accident, there would be no "occurrence" sufficient to satisfy the insuring agreement, and there would be no coverage under the Policy.

121.

Further, the stated policy period for the Auto-Owners Policy was September 20, 2019 through September 20, 2020.  See ¶ 42.

122.

The Auto-Owners Policy was cancelled effective December 20, 2019 for nonpayment of premium.

123.

The Auto-Owners Policy ends on the effective date of the cancellation.  See ¶ 43.

124.

To the extent the damages at issue in the underlying lawsuit occurred outside the policy period for the Auto-Owners Policy or otherwise failed to meet the definition of an occurrence, the condition of coverage referenced in paragraph 42 of this Complaint is not satisfied.

125.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

126.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant MEP Pro for any liability that occurred outside the policy periods of any Policy.

## SEVENTH CLAIM FOR RELIEF

### Property Damage/Economic Damages – Auto-Owners

127.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

128.

To the extent that MEP Pro has failed to satisfy the conditions of coverage in the contracts of insurance issued by Auto-Owners, the Auto-Owners Policy does not provide coverage for the underlying lawsuit against Defendant MEP Pro, and Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

129.

Specifically, if the Auto-Owners Policy was ever in force, the Auto-Owners Policy at issue required that the alleged occurrence be the result of property damage.  See ¶ 42.

130.

To the extent the damages at issue in the underlying lawsuit are the result of MEP Pro's failure to diligently pursue and maintain the progress of its work according to Whiting-Turner's schedules; MEP Pro's failure to provide proper supervision and management of its work; failure to provide sufficient manpower;

failure to supply all necessary materials; and failure to hold in trust payments for lower-tier subcontractors; the conditions of coverage referenced in paragraph 42 of this Complaint are not satisfied.

131.

To the extent the damages at issue in the underlying lawsuit are the result of economic damages, including, without limitation, consequential damages, liquidated damages, costs incurred by Whiting-Turner to complete MEP Pro's obligations, amounts Whiting-Turner paid to second-tier subcontractors or suppliers, debts incurred by Whiting-Turner, or other economic damages, the conditions of coverage referenced in paragraph 42 of this Complaint are not satisfied.

132.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

133.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant MEP Pro for non-property damages, such as economic damages.

**EIGHTH CLAIM FOR RELIEF**

**Damage Known Prior to Policy Period – Auto-Owners**

134.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

135.

Whiting-Turner placed MEP Pro on notice of defaults and claims of damages which gave rise to the underlying lawsuit at least as early as September 7, 2018.

136.

As a condition of coverage, the insurance agreements do not provide coverage for "property damage" which is known to an insured prior to the policy period.  See ¶ 42.

137.

If the Auto-Owners Policy was ever in force, to the extent property damage was known to MEP Pro before September 20, 2019, the beginning of the policy period, MEP Pro breached the conditions of coverage of the Auto-Owners Policy.

138.

A question exists whether MEP Pro had knowledge of property damage claimed by Whiting-Turner prior to the policy period for the Auto-Owners Policy.

139.

If MEP Pro had knowledge of property damage prior to the policy period for the Auto-Owners Policy, then the Auto-Owners Policy does not provide coverage for the underlying lawsuit against Defendant MEP Pro, and Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

140.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties, if any, under the applicable contracts of insurance determined and avoid the possible accrual of damages.

141.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant MEP Pro for any liability that may be sought against said Defendant in the underlying lawsuit because MEP Pro had prior knowledge of property damage before the first date of the policy period for the Auto-Owners Policy.

**NINTH CLAIM FOR RELIEF**

**Expected or Intended Injury – Auto-Owners**

142.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

143.

To the extent that the contract of insurance issued by Auto-Owners does not provide coverage for the underlying lawsuit against Defendant MEP Pro, Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

144.

Specifically, if the Auto-Owners Policy was ever in force, the Auto-Owners Policy at issue contain exclusions from coverage for liability for property damage expected or intended by the insured.  See ¶ 44.

145.

To the extent the damages at issue in the underlying lawsuit arise out of property damage expected or intended by the insured, the exclusions referenced in paragraph 44 of this Complaint apply.

146.

Auto-Owners owes no duty to defend or indemnify Defendant MEP Pro for the damages asserted against MEP Pro in the underlying lawsuit because the damages were the result of MEP Pro's acts or omissions, were expected or intended from the standpoint of MEP Pro, and therefore fall within the expected or intended exclusions set forth in paragraph 44 of this Complaint.

147.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

148.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Defendant MEP Pro for any liability that may come within the expected or intended exclusions recited in paragraph 44

of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## TENTH CLAIM FOR RELIEF

### Contractual Liability – Auto-Owners

149.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

150.

To the extent that the contract of insurance issued by Auto-Owners does not provide coverage for the underlying lawsuit against Defendant MEP Pro, Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

151.

Specifically, if the Auto-Owners Policy was ever in force, the Auto-Owners Policy at issue contains exclusions from coverage for liability and damages arising from obligations assumed by MEP Pro for contractual liability.  See ¶ 44.

152.

To the extent MEP Pro is obligated to pay Whiting-Turner's alleged damages by reason of the assumption of liability in a contract, the exclusions referenced in paragraph 44 of this Complaint apply.

153.

Auto-Owners owes no duty to defend or indemnify Defendant MEP Pro for the liability and damages asserted against MEP Pro in the underlying lawsuit because the liability and damages were the result of MEP Pro's assumption of liability in a contract or agreement and therefore fall within the contractual liability exclusion set forth in paragraph 44 of this Complaint.

154.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

155.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Defendant MEP Pro for any liability that may come within the contractual liability exclusion recited in paragraph 44 of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## ELEVENTH CLAIM FOR RELIEF

### Business Risk Exclusions – Auto-Owners

156.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

157.

To the extent that the contract of insurance issued by Auto-Owners does not provide coverage for the underlying lawsuit against Defendant MEP Pro, Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

158.

Specifically, if the Auto-Owners Policy was ever in force, the Auto-Owners Policy at issue contains exclusions from coverage for business risk exclusions, including damage to property, damage to your work product, damage to your work, or damage to impaired property or property not physically injured.  See ¶ 44.

159.

Whiting-Turner alleges that MEP Pro's work was incorrectly performed, that there were defects in construction, and that MEP Pro furnished and installed pipe pieces which caused leaks during construction, which caused damage to

adjacent parts of the building.  Whiting-Turner alleges that MEP Pro caused delays that resulted in additional costs.

160.

To the extent that MEP Pro is obligated to pay Whiting-Turner's alleged damages which are subject to a business risk exclusion, the exclusions referenced in paragraph 44 of this Complaint apply.

161.

Auto-Owners owes no duty to defend or indemnify Defendant MEP Pro for the damages asserted against MEP Pro in the underlying lawsuit because the damages were the result of MEP Pro's acts or omissions, were damage to property, damage to "your work" product, damage to "your work," or damage to impaired property or property not physically injured, and therefore fall within the business risk exclusions set forth in paragraph 44 of this Complaint.

162.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

163.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to the Defendant MEP Pro for any liability that may come within the business risk exclusions recited in paragraph 44 of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## TWELFTH CLAIM FOR RELIEF

### Fungi or Bacteria – Auto-Owners

164.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

165.

To the extent that the contract of insurance issued by Auto-Owners does not provide coverage for the underlying lawsuit against Defendant MEP Pro, Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

166.

Specifically, if the Auto-Owners Policy was ever in force, the Auto-Owners Policy at issue contains a **Georgia Limited Fungi or Bacteria Coverage-Small**

**Business** endorsement, which limits coverage for property damage that is the result of a fungi or bacteria incident.  <u>See</u> ¶ 45.

167.

To the extent Whiting-Turner's alleged damages arise out of out "fungi" or bacteria, the above-quoted endorsement may preclude or limit coverage under the Policy.

168.

To the extent that MEP Pro is obligated to pay Whiting-Turner's alleged damages which constitute a fungi or bacteria incident, the limitations referenced in paragraph 45 of this Complaint apply.

169.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties under the applicable contract of insurance determined and avoid the possible accrual of damages.

170.

Accordingly, Auto-Owners seeks a declaration that its coverage obligations are limited to the extent that the **Georgia Limited Fungi or Bacteria Coverage-Small Business** limitations recited in paragraph 45 of this Complaint.

## THIRTEENTH CLAIM FOR RELIEF

### <u>Cooperation – Auto-Owners Policy</u>

171.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

172.

If the Auto-Owners Policy was ever in force, under the Auto-Owners Policy, MEP Pro is required to authorize Auto-Owners to obtain records and other information and cooperate with Auto-Owners in its investigation or settlement of the claim or defense of the suit.  <u>See</u> ¶ 46, 47.

173.

Auto-Owners has requested information from MEP Pro about other insurance policies which may also be in effect and otherwise requested MEP Pro's cooperation in this lawsuit.

174.

A question exists whether MEP Pro breached its obligations to cooperate with Auto-Owners investigation of this claim.

175.

If MEP Pro failed or fails to cooperate with Auto-Owners, then the Auto-Owners Policy does not provide coverage for the underlying lawsuit against

Defendant MEP Pro, and Auto-Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

176.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties, if any, under the applicable contracts of insurance determined and avoid the possible accrual of damages.

177.

Accordingly, Auto-Owners seeks a declaration that no indemnification or duty to defend is owed by Auto-Owners to Defendant MEP Pro for any liability that may be sought against said Defendant in the underlying lawsuit because MEP Pro failed to cooperate with Auto-Owners' investigation and defense of the claim.

## FOURTEENTH CLAIM FOR RELIEF

### Other Insurance – Auto-Owners Policy

178.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

179.

If the Auto-Owners Policy was ever in force, under the Auto-Owners Policy, Auto-Owners' coverage obligations are limited to the extent that other insurance provides coverage for this claim.  See ¶ 48.

180.

A question exists whether other insurance exists which may provide coverage to MEP Pro for the damages sought by Whiting-Turner in the underlying lawsuit.

181.

If other insurance exists which provides coverage to MEP Pro for this claim, then the coverage under the Auto-Owners Policy is limited or may not exist, and Auto-Owners may have no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

182.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Auto-Owners may have its rights and duties, if any, under the applicable contracts of insurance determined and avoid the possible accrual of damages.

183.

Accordingly, Auto-Owners seeks a declaration that its obligation to indemnify and its duty to defend is limited by the other insurance provisions of the policy, as recited in Paragraph 48.

## FIFTEENTH CLAIM FOR RELIEF

### Lack of Notice – Owners Policies

184.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

185.

Whiting-Turner placed MEP Pro on notice of its defaults and claim of damages, which defaults and claim of damages gave rise to the underlying lawsuit at least as early as September 7, 2018.

186.

MEP Pro never placed Owners on notice of any claim related to the underlying lawsuit.

187.

Under the Owners Policies, MEP Pro was required to notify the insurer "as soon as practicable of an 'occurrence' or an offense which may result in a claim." See ¶ 34, 35.

188.

A question exists whether Owners has any obligation to provide coverage if MEP Pro failed to provide notice of the claim giving rise to the underlying lawsuit.

189.

If MEP Pro failed to provide notice and breached the Owners Policies, then the Owners Policies do not provide coverage for the underlying lawsuit against Defendant MEP Pro, and Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

190.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Owners may have its rights and duties, if any, under the applicable contracts of insurance determined and avoid the possible accrual of damages.

191.

Accordingly, Owners seeks a declaration that no indemnification or duty to defend is owed by Owners to Defendant MEP Pro under either of the Owners Policies for any liability that may be sought against said Defendant in the underlying lawsuit because MEP Pro failed to provide timely notice of the claim.

## SIXTEENTH CLAIM FOR RELIEF

### Occurrence– Owners Policies

192.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

193.

To the extent that MEP Pro has failed to satisfy the conditions of coverage in the contracts of insurance issued by Owners, the Owners Policies do not provide coverage for the underlying lawsuit against Defendant MEP Pro, and Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

194.

Specifically, no coverage is owed to Defendant MEP Pro under the Owners Policies for the damages asserted in the underlying lawsuit to the extent that the damages at issue were not "caused by an 'occurrence,'" as defined under the Owners Policies, which occurred during the policy period.  See ¶ 31.

195.

Therefore, to the extent that the alleged damages were not caused by an "occurrence" under the Owners Policies at issue, no coverage is afforded under

said policies for liability or damages that may be sought against Defendant MEP Pro in the underlying lawsuit.

196.

For instance, to the extent Whiting-Turner's alleged injuries were not caused by an accident, there would be no "occurrence" sufficient to satisfy the insuring agreement, and there would be no coverage under the Policies.

197.

Further, the stated policy period for the Owners Policies were August 4, 2017 to August 4, 2018 and August 4, 2018 to August 4, 2019.  See ¶ 31.

198.

To the extent the damages at issue in the underlying lawsuit did not occur during either of the policy periods for the Owners Policies or otherwise failed to meet the definition of an occurrence, the condition of coverage referenced in paragraph 31 of this Complaint is not satisfied.

199.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

200.

Accordingly, Owners seeks a declaration that no indemnification or duty to defend is owed by Owners to Defendant MEP Pro under either of the Owners Policies for any liability that occurred outside the policy periods of any Policy.

**SEVENTEENTH CLAIM FOR RELIEF**

**Property Damage/Economic Damages – Owners**

201.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

202.

To the extent that MEP Pro has failed to satisfy the conditions of coverage in the contracts of insurance issued by Owners, the Owners Policies do not provide coverage for the underlying lawsuit against Defendant MEP Pro, and Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

203.

Specifically, the Owners Policies at issue require that the alleged occurrence be the result of property damage.  See ¶ 31.

204.

To the extent the damages at issue in the underlying lawsuit are the result of MEP Pro's failure to diligently pursue and maintain the progress of its work according to Whiting-Turner's schedules; MEP Pro's failure to provide proper supervision and management of its work; failure to provide sufficient manpower; failure to supply all necessary materials; and failure to hold in trust payments for lower-tier subcontractors; the conditions of coverage referenced in paragraph 31 of this Complaint are not satisfied.

205.

To the extent the damages at issue in the underlying lawsuit are the result of economic damages, including, without limitation, consequential damages, liquidated damages, costs incurred by Whiting-Turner to complete MEP Pro's obligations, amounts Whiting-Turner paid to second-tier subcontractors or suppliers, debts incurred by Whiting-Turner, or other economic damages, the conditions of coverage referenced in paragraph 31 of this Complaint are not satisfied.

206.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Owners may have its

rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

207.

Accordingly, Owners seeks a declaration that no indemnification or duty to defend is owed by Owners to Defendant MEP Pro under either of the Owners Policies for non-property damages, such as economic damages.

**EIGHTEENTH CLAIM FOR RELIEF**

**Expected or Intended Injury – Owners**

208.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

209.

To the extent that the contracts of insurance issued by Owners do not provide coverage for the underlying lawsuit against Defendant MEP Pro, Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

210.

Specifically, the Owners Policies at issue contain exclusions from coverage for liability for property damage expected or intended by the insured.  See ¶ 32.

211.

To the extent the damages at issue in the underlying lawsuit arise out of property damage expected or intended by the insured, the exclusions referenced in paragraph 32 of this Complaint apply.

212.

Owners owes no duty to defend or indemnify Defendant MEP Pro for the damages asserted against MEP Pro in the underlying lawsuit because the damages were the result of MEP Pro's acts or omissions, were expected or intended from the standpoint of MEP Pro, and therefore fall within the expected or intended exclusions set forth in paragraph 32 of this Complaint.

213.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

214.

Accordingly, Owners seeks a declaration that no indemnification or duty to defend is owed by Owners to the Defendant MEP Pro under either of the Owners Policies for any liability that may come within the expected or intended exclusions

recited in paragraph 32 of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## NINETEENTH CLAIM FOR RELIEF

### Contractual Liability – Owners

215.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

216.

To the extent that the contracts of insurance issued by Owners do not provide coverage for the underlying lawsuit against Defendant MEP Pro, Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

217.

Specifically, the Owners Policies at issue contain exclusions from coverage for liability for contractual liability.  See ¶ 32.

218.

To the extent MEP Pro is obligated to pay Whiting-Turner's alleged damages by reason of the assumption of liability in a contract, the exclusions referenced in paragraph 32 of this Complaint apply.

219.

Owners owes no duty to defend or indemnify Defendant MEP Pro for the liability and damages asserted against MEP Pro in the underlying lawsuit because the liability and damages were the result of MEP Pro's assumption of liability in a contract or agreement and therefore fall within the contractual liability exclusion set forth in paragraph 32 of this Complaint.

220.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

221.

Accordingly, Owners seeks a declaration that no indemnification or duty to defend is owed by Owners to the Defendant MEP Pro under either of the Owners Policies for any liability that may come within the contractual liability exclusion recited in paragraph 32 of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## TWENTIETH CLAIM FOR RELIEF

### <u>Business Risk Exclusions – Owners</u>

222.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

223.

To the extent that the contracts of insurance issued by Owners do not provide coverage for the underlying lawsuit against Defendant MEP Pro, Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

224.

Specifically, the Owners Policies at issue contain exclusions from coverage for business risk exclusions, including damage to property, damage to your work product, damage to your work, or damage to impaired property or property not physically injured.  <u>See</u> ¶ 32.

225.

Whiting-Turner alleges that MEP Pro's work was incorrectly performed, that there were defects in construction, and that MEP Pro furnished and installed pipe pieces which caused leaks during construction, which caused damage to

adjacent parts of the building.  Whiting-Turner alleges that MEP Pro caused delays that resulted in additional costs.

226.

To the extent that MEP Pro is obligated to pay Whiting-Turner's alleged damages which are subject to a business risk exclusion, the exclusions referenced in paragraph 32 of this Complaint apply.

227.

Owners owes no duty to defend or indemnify Defendant MEP Pro for the damages asserted against MEP Pro in the underlying lawsuit because the damages were the result of MEP Pro's acts or omissions, were damage to property, damage to "your work" product, damage to "your work," or damage to impaired property or property not physically injured, and therefore fall within the business risk exclusions set forth in paragraph 32 of this Complaint.

228.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

229.

Accordingly, Owners seeks a declaration that no indemnification or duty to defend is owed by Owners to the Defendant MEP Pro under either of the Owners Policies for any liability that may come within the business risk exclusions recited in paragraph 32 of this Complaint, including, but not limited to, any punitive damages that may be sought against said Defendant in the underlying lawsuit.

## TWENTY-FIRST CLAIM FOR RELIEF

### Fungi or Bacteria – Owners

230.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

231.

To the extent that the contracts of insurance issued by Owners do not provide coverage for the underlying lawsuit against Defendant MEP Pro, Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

232.

Specifically, the Owners Policies at issue each contain a **Georgia Limited Fungi or Bacteria Coverage-Small Business** endorsement, which limits coverage for property damage that is the result of a fungi or bacteria incident.  See ¶ 33.

233.

To the extent Whiting-Turner's alleged damages arise out of out "fungi" or bacteria, the above-quoted endorsement may preclude or limit coverage under the Policies.

234.

To the extent that MEP Pro is obligated to pay Whiting-Turner's alleged damages which are the result of fungi or bacteria, the limitations referenced in paragraph 45 of this Complaint apply.

235.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Owners may have its rights and duties under the applicable contracts of insurance determined and avoid the possible accrual of damages.

236.

Accordingly, Owners seeks a declaration that its coverage obligations are limited to the extent that the **Georgia Limited Fungi or Bacteria Coverage-Small Business** limitations recited in paragraph 33 of this Complaint.

## TWENTY-SECOND CLAIM FOR RELIEF

### Cooperation – Owners Policies

237.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

238.

Under the Owners Policies, MEP Pro is required to authorize Owners to obtain records and other information and cooperate with Owners in its investigation or settlement of the claim or defense of the suit.  See ¶ 34, 35.

239.

Owners has requested information from MEP Pro about other insurance policies which may also be in effect and otherwise requested MEP Pro's cooperation in this lawsuit.

240.

A question exists whether MEP Pro has cooperated with Owners investigation of this claim.

241.

If MEP Pro failed or fails to cooperate with Owners, then the Owners Policies do not provide coverage for the underlying lawsuit against Defendant

MEP Pro, and Owners has no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in that lawsuit.

242.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Owners may have its rights and duties, if any, under the applicable contracts of insurance determined and avoid the possible accrual of damages.

243.

Accordingly, Owners seeks a declaration that no indemnification or duty to defend is owed by Owners to Defendant MEP Pro under either of the Owners Policies for any liability that may be sought against said Defendant in the underlying lawsuit because MEP Pro failed to cooperate with Owners' investigation and defense of the claim.

## TWENTY-THIRD CLAIM FOR RELIEF

### Other Insurance – Owners Policies

244.

Plaintiffs reiterate paragraphs 1 through 70 as if fully set forth herein.

245.

Under the Owners Policies, Owners' coverage obligations are limited to the extent that other insurance provides coverage for this claim.  See ¶ 36.

246.

A question exists whether other insurance exists which may provide coverage for the claims asserted by Whiting-Turner against MEP Pro.

247.

If other insurance exists which provides coverage for Whiting-Turner's claims against MEP Pro, then the coverage under the Owners Policies is limited or may not exist, and Owners may have no duty to defend or indemnify Defendant MEP Pro for the claims asserted against it in the underlying lawsuit.

248.

A controversy of a justiciable nature presently exists among the parties, which demands a declaration by this Court, in order that Owners may have its rights and duties, if any, under the applicable contracts of insurance determined and avoid the possible accrual of damages.

249.

Accordingly, Owners seeks a declaration that its obligation to indemnify and its duty to defend is limited by the other insurance provisions of the Owners Policies, as recited in Paragraph 36.

**WHEREFORE,** Auto-Owners and Owners pray:

a.    That this Court enter a Declaratory Judgment declaring that Auto-Owners and Owners have no duty to defend or indemnify Defendant MEP Pro under the aforementioned contracts of insurance for any claims made against them in the underlying lawsuit;

b.    That Auto-Owners and Owners be awarded their costs in this action;

c.    That this Court award such other and further relief as this honorable Court may deem proper under the circumstances; and

d.    That process and summons be issued to all Defendants herein and that service on the Defendants be had as required by law.

## **CERTIFICATION OF FONT**

We hereby certify that this pleading has been prepared with Times New Roman 14 point selection, as approved by the Court in L.R 5.1B.

Respectfully submitted this ___8th___ day of March, 2021.

Respectfully submitted,

SWIFT, CURRIE, McGHEE & HIERS

*/s/ Mark T. Dietrichs*
Mark T. Dietrichs
Georgia Bar No. 221722

*/s/ Rebecca E. Strickland*
Rebecca E. Strickland
Georgia Bar No. 358183
*Attorneys for Plaintiffs Auto-Owners Insurance Company and Owners Insurance Company*

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel:  404-874-8800
Mark.dietrichs@swiftcurrie.com
Rebecca.strickland@swiftcurrie.com

4835-8497-9418, v. 2

-85-